UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

JODIE SAPP,                               )
                                          )
         Plaintiff,                       )
                                          )
    v.                                    )    Case No. 1:19-cv-00121-JD
                                          )
ANDREW M. SAUL,                           )
Commissioner of Social Security,          )
                                          )
         Defendant.                       )

# OPINION AND ORDER

Plaintiff Jodie Sapp filed a complaint seeking review of the final decision of the Commissioner of Social Security denying her application for social security disability benefits. [DE 1]. The matter is fully briefed and ripe for decision. [DE 11, 14]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

## I. FACTUAL BACKGROUND

In September 2016, Ms. Sapp applied for disability insurance benefits, claiming her disability began June 28, 2016. On December 5, 2017, Ms. Sapp participated in a hearing before an ALJ. The ALJ issued an unfavorable decision denying her disability benefits and concluded that Ms. Sapp was not disabled under the Social Security Act because she had the residual functional capacity that allowed her to perform past relevant work. The Appeals Council denied Ms. Sapp's request for review, after which Ms. Sapp filed this appeal. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Ms. Sapp seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Ms. Sapp has a long history of physical, emotional, and mental issues. Back in 2000, Ms. Sapp started to experience leg pain and left side numbness. Due to protrusions on L4-S1, a regime of regular and ongoing schedule of injections was initiated. (R. 369). A cervical MRI showed multiple cervical disc bulges at C4-5 and C5-6. (R. 385). She developed left shoulder/neck pain, which was treated with injections. (R. 520-21). Ms. Sapp occasionally presented with depression and anxiety and different medication attempts were made to treat those symptoms. (R. 397, 399). In early 2015, Ms. Sapp began treatment for attention deficit/hyperactive disorder ("ADHD"). (R. 343). Ms. Sapp also suffers from overactive bladder, presenting as overactivity, urinary frequency and incontinence, and has attempted to treat it with medication. (R. 338). Ms. Sapp presented with hematuria, polyuria and urinary incontinence in 2017. (R. 640).

Ms. Sapp's neck, back and leg pain worsened and in June 2016 she could not walk without pain. (R. 326). Treating physician Dr. Kevin Rahn, M.D. characterized her symptoms as "neurogenic claudication," noting it is likely that injections may no longer be useful, and that surgery may be needed. (R. 326-27). A nurse practitioner indicated that Ms. Sapp should not work until she had surgery and should Ms. Sapp work prior to surgery, she risks permanent damage. (R. 650). In August 2016, Dr. Joseph Putnam, M.D. prescribed a new medication for Ms. Sapp's ADHD since she had the inability to stay seated, stay on task, and could not complete tasks, with prior medications failing to work. (R. 648).

Ultimately in June 2017, Dr. Rahn performed back surgery to relieve pressure on Ms. Sapp's spinal cord or nerves. (R. 58, 470). Post-surgery, Ms. Sapp continued to present with some pain, numbness, and tingling in her lower extremities. Due to a fall after the surgery, she had some decreased range of motion and pain in her shoulder. (R. 485, 487).

At the hearing, Ms. Sapp and a vocational expert ("VE") testified. Ms. Sapp testified that in addition to lifting, standing, and moving, her overactive bladder was the most significant impairment preventing her from working. (R. 84). She stated that she goes to the restroom about three times an hour, sometimes more, and does not believe that her medication is helping anymore. (R. 95-96). Ms. Sapp stated that her overactive bladder contributed to losing her previous inspecting and sorting job because she went to the restroom twice in an hour. (R. 106-07). After her back surgery, Ms. Sapp can walk about 45 minutes before sitting and she can stand more than she can walk. (R. 86). Ms. Sapp testified that she lifted her granddaughter who she believes was 35 pounds, on to the toilet once, however, she tries not to lift more than ten pounds (R. 90, 93, 108). Ms. Sapp testified that she believes she has had ADHD since junior high or younger, but she was never diagnosed. (R. 101). She testified that she currently is not taking medication to treat her ADHD. (R. 97). Ms. Sapp explained that she cannot focus on one thing and complete that task because she finds herself trying to multitask, which causes everything to take longer to finish. (R. 97). Ms. Sapp also testified that she has lost jobs due to her punctuality since sometimes she could not focus enough to get ready and leave the house to get to work on time. (R. 111).

The VE testified that a person of Ms. Sapp's age, education, and work experience in conjunction with the hypothetical limitations posed by the ALJ, which ultimately became the assigned residual functional capacity, could perform Ms. Sapp's past relevant work of Assembler Inspector, as Ms. Sapp testified to performing this job, not as it is performed in the economy. (R. 117-19). The VE further testified that to maintain employment, an employee must be on task for at least 85% of the workday and cannot consistently miss two or three days a month or more than 12 days a year. (R. 119).

## II. STANDARD OF REVIEW

Because the Appeals Council denied review of the ALJ's decision, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas*, 732 F.3d at 707. This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision so long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to

address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Ms. Sapp offers several arguments in support of remand. One is that the ALJ erred in failing to incorporate limitations into the assigned RFC accounting for her moderate limitations in concentration, persistence, or maintaining pace and the RFC was not supported by substantial evidence. As explained below, the Court agrees and finds that this error warrants remand. The Court need not address the remaining arguments, which will either be moot or can be addressed on remand.

The ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96–8p, based upon medical evidence as well as other evidence, such as testimony by the claimant. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even as to limitations that are not severe. *Id*.; *see* 20 C.F.R. § 404.1529(a) (in making a disability determination, the ALJ must consider all of a claimant's symptoms and how those symptoms affect a claimant's daily life and ability to work). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). The ALJ's RFC assessment and the

hypothetical questions posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

In particular, if the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence, or pace, that limitation must be accounted for in the hypothetical question posed to the VE and the RFC assessment; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). The Seventh Circuit has stated that although "particular words need not be incanted, [the court] cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (citing *O'Connor-Spinner*, 627 F.3d at 619); *see also DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019) (holding that limiting a claimant to "unskilled work" with no "fast-paced production line or tandem tasks" in the hypothetical question posed to the VE was not sufficient to account for a moderate limitation in concentration, persistence, or pace).

At step 3, the ALJ found that Ms. Sapp has a moderate limitation in concentration, persistence, or maintaining pace. (R. 22). In his decision, the ALJ noted that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3. . . . The following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental functional analysis." (R. 22). Accordingly, as Ms. Sapp argues, the ALJ's decision cannot be consistent with itself if the moderate limitation of concentration, persistence, or maintaining

7

pace is not properly incorporated into the RFC. The Court agrees. The ALJ found the following RFC:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) except the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. The claimant can meet production requirements allowing her to sustain a flexible and goal oriented pace. She would be limited to work within a low stress job, requiring only occasional decision making.

(R. 23). The RFC here did not include the phrase "moderate difficulties with concentration, persistence, and pace." Nor does the RFC include the often-scrutinized phrases such as "simple, repetitive tasks" or "unskilled work." The ALJ ignored and failed to adequately explain his conclusion to discount substantial record evidence indicating that the degree of Ms. Sapp's moderate limitation in concentration, persistence, or pace is greater than accounted for in the RFC.

The ALJ's opinion is further inconsistent with itself because it provides significant weight to the State agency psychological consultants' opinions, however, cherry-picks evidence from those opinions in support of non-disability. While the Court realizes that an ALJ need not discuss every piece of evidence in the record in rendering his decision, the ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ's decision references that these opinions conclude that she has a moderate restriction in concentration, persistence, and pace. (R. 24, 131, 143). However, the ALJ fails to include additional evidence from these State agency opinions that further bolster Ms. Sapp's claim that her moderate limitation in concentration, persistence and maintaining pace greatly impacts her ability to work. The opinions noted that Ms. Sapp has a "[s]ustained concentration and persistence limitation"

and her "ability to maintain attention and concentration for extended periods" is moderately limited. (R. 132, 145, 134, 147). In his decision, the ALJ concludes that Ms. Sapp is capable of carrying out semi-skilled tasks (R. 24), however, fails to include that her "attention/concentration are moderately impacted" or that she struggles to maintain extended periods of attention and concentration. The ALJ did not provide an explanation for omitting this evidence. Although significant weight was given to these opinions, the ALJ did not incorporate them into the RFC and this error requires remand.

In addition to the State agency psychological consultants, Ms. Sapp was examined by Dr. Boen, a consultative examiner, who opined that Ms. Sapp has "concentration moderately below normal," she "would have trouble being able to concentrate on the job," and she "would have trouble being able to stay on task." (R. 358). The ALJ affords this opinion great weight as Dr. Boen is a specialist in the mental health field, examined Ms. Sapp, has familiarity with the Agency regulations, and his opinion was generally consistent with the medical evidence of record. (R. 25). The Court acknowledges that the ALJ included some limitations in the RFC accounting for concentration, persistence, or pace. Yet, even with great weight, Dr. Boen's opinion is not reflected in the RFC. Nor did the ALJ provide a logical bridge explaining how the opinion of Dr. Boen, particularly regarding her diminished capacity to maintain attention and concentration on the job, is sufficiently illustrated in the RFC, or alternatively, need not be included. A psychological consultative examiner is "an agency doctor [and] unlikely therefore to exaggerate an applicant's disability." *Garcia v. Colvin*, 741 F.3d 788, 761–62 (7th Cir. 2013). When an ALJ gives great weight to a medical opinion, he must explain why those limitations are not included in the RFC. *Smith v. Colvin*, 9 F. Supp. 3d 875, 887 (E.D. Wis. 2014) (holding that where an "ALJ gives a medical opinion great weight, the ALJ must explain why limitations

9

included in the opinion are not included in the RFC"); *Cougill v. Colvin*, No. 1:15-CV-0993-SEB-DML, 2016 WL 4772297, at *4 (S.D. Ind. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 4761558 (S.D. Ind. Sept. 13, 2016) (holding that the ALJ's failure to provide explanation for not including limitations in a medical opinion that was given great weight prevents a court from "following the path of [the ALJ's] reasoning"). The ALJ did not provide an explanation for giving great weight to Dr. Boen's consultative examination opinion but failing to include Ms. Sapp's below normal concentration, her trouble to stay on task, and difficulty concentrating on the job in the assigned RFC. The ALJ's conclusory support for the RFC is that he "considered the claimant's deficits with concertation when limiting her to flexible, yet goal-oriented work." (R. 26). However, the ALJ fails to acknowledge that the RFC also requires Ms. Sapp to meet "production requirements," which both her testimony and the medical evidence indicate that she is not capable of doing. Because his failure to provide adequate explanation prevents the Court from following the ALJ's reasoning and affording Ms. Sapp a meaningful review, remand is required.

As the Commissioner argues, the Seventh Circuit has confirmed that there is no categorical rule barring particular terminology in an RFC so long as it addresses a person's moderate limitation in concentration, persistence or pace. *See Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019); *Burmester v. Berryhill*, 920 F.3d 507 (7th Cir. 2019). However, these cases are distinguishable from the instant case. In *Jozefyk*, the plaintiff failed to provide documented medical evidence that he had concentration difficulties nor did he testify about any restrictions in his capabilities related to concentration, persistence, or pace, which, as demonstrated above, is far from the case here. 923 F.3d at 497. Ms. Sapp's medical record and hearing testimony is full of evidence that not only does she have difficulties in concentration, but those difficulties impact

10

her ability to hold employment. In *Burmester*, the ALJ gave great weight to a doctor's opinion that assessed the plaintiff's work capacity which indicated that "maintaining concentration and attention should be manageable." 920 F.3d at 511. In contrast here, a consultative examining physician concluded the opposite, namely that Ms. Sapp will have trouble concentrating on the job. (R. 358). Therefore, while an ALJ's failure to account for a moderate limitation in concentration, persistence or pace can be harmless, as it was in *Jozefyk*, the error here is not.

The ALJ did not clearly explain whether he relied on any of the VE's testimony when reaching his conclusions at step 4 and alternatively, step 5. (R. 26-27). The ALJ indicated that he reviewed "the claimant's earnings record, work history report and testimony" before concluding that Ms. Sapp had past relevant work, that she was capable of performing one of those jobs, and alternatively, there are other jobs existing in the national economy that she can perform, although fails to list those jobs in his opinion. (R. 26). He does not reference the VE's testimony in his decision. While the ALJ's conclusion does not contradict the VE's testimony in response to the hypothetical posed during the hearing, the ALJ failed to explain why certain testimony was not included in the RFC. The VE testified that to maintain employment, an employee must be on task for at least 85% of the workday and cannot consistently miss two or three days a month or more than 12 days a year. (R. 119). Had the ALJ found that Ms. Sapp's moderate limitation in concentration, persistence, and maintaining pace inhibited her from staying on task 85% of the workday, a finding of disability would have been required. The ALJ's failure to explain whether Ms. Sapp could be on task for 85% of the workday or not does not afford the claimant meaningful review by this court, further necessitating remand for explanation.

The Court finds it troubling that the ALJ's decision is silent regarding Ms. Sapp's overactive bladder, particularly, its absence from the RFC. While Ms. Sapp did not directly argue

11

this in her brief, she does list several mental and medical impairments that impact her limitation in concentration, persistence, or maintaining pace, which includes her bladder issues. [DE 11 at 15-16]. The testimony and medical evidence substantially support that this impairment, although non-severe, greatly impacts and limits Ms. Sapp's ability to do work related activities. Ms. Sapp testified that in addition to lifting, standing, and moving, her overactive bladder was the most significant impairment preventing her from working. (R. 84). This is because she needs to use the restroom about three times an hour, sometimes more. (R. 95-96). She also stated that she was previously fired from an inspecting and sorting job because she went to the restroom twice in one hour. (R. 106-07). In addition to this testimony, the medical evidence is riddled with references to her bladder issues and her difficulties in treating it. (R. 337, 338, 640). Her need to use the restroom as frequently as she testified to, coupled with her ADHD, directly limits her ability to meet production requirements, which the assigned RFC states she can meet. Based on the impact this medical impairment has had on Ms. Sapp's work-related activities and the VE's testimony that an employee must be on track 85% of the workday, on remand the ALJ shall consider whether a limitation should be included in the RFC to account for her overactive bladder and in the alternative, provide a logical bridge from the evidence to his conclusion to omit it. Additionally, on remand, the ALJ shall explain how his RFC determination, and hypothetical question to the VE, accommodate Ms. Sapp's moderate limitation in concentration, persistence, or pace and how the RFC is substantially supported by the evidence, including all medical impairments. The parties may also address Ms. Sapp's remaining arguments.

Lastly, the Court addresses Ms. Sapp's request for a direct award of benefits. [DE 11 at 22]. The Court does not find this to be an appropriate remedy here. As the Commissioner argues, the Supreme Court has emphasized that "[i]f the record before the agency does not support the

agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Further, the Seventh Circuit has also established that a direct award of benefits is a "rare step." *Martin v. Saul*, No. 19-1957, 2020 WL 595998, at *1 (7th Cir. Feb. 7, 2020). "An award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion – that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). The Court agrees with the Commissioner and finds that Ms. Sapp failed to establish she was entitled to a direct award of benefits and finds that remand is the appropriate remedy.

## V. CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 4, 2020

/s/ JON E. DEGUILIO
Judge
United States District Court